**DUN & BRADSTREEET, INC., a Delaware corporation, Plaintiff,**

**v.**

**Tom D. McELDOWNEY, Director of the Department of Finance of the State of Idaho, Defendant.**

**Civ. No. 82–1080.**

United States District Court,
D. Idaho.

May 13, 1983.

Dale G. Higer of Eberle, Berlin, Kading, Turnbow & Gillespie, Boise, Idaho, for plaintiff.

Patrick V. Collins, Deputy Atty. Gen., State of Idaho, Dept. of Finance, Boise, Idaho, for defendant.

## MEMORANDUM OPINION AND ORDER

RYAN, District Judge.

This action is brought by the plaintiff, Dun & Bradstreet, to restrain and enjoin Tom D. McEldowney, Director of the Department of Finance of the State of Idaho, from enforcing the provisions of Chapter 22, Title 26, Idaho Code, and more particularly, Section 26–2223A, Section 26–2229, Section 26–2233, and Section 26–2242(8),

Idaho Code, and the rules and regulations adopted thereunder. Dun & Bradstreet asks this court to enter a declaratory judgment in accordance with the provisions of 28 U.S.C. §§ 2201 and 2202 declaring that the provisions of said statutes of the State of Idaho and the rules and regulations adopted thereunder are null and void and have no effect as being a contravention of the commerce clause, Article I, Section 8, of the Constitution of the United States.

The parties have caused to be filed a Stipulation and Order Concerning Issues Presented and Conduct of the Case, and providing that depositions be taken of one witness for each party, after which the parties fully briefed the matter to the court. The court heard oral argument of counsel, and being fully advised in the premises, sets forth the following opinion.

Admitted facts requiring no proof filed by the parties are as follows:

(a) Dun & Bradstreet, Inc., is a corporation organized and existing under the laws of the State of Delaware, and has its principal place of business in New York City, New York.

(b) Tom D. McEldowney is the Director of the Department of Finance of the State of Idaho.

(c) Dun & Bradstreet, Inc., is a collection agency and as such engages in the activities enumerated in Section 26–2223, Idaho Code, and is a permittee authorized to engage in such activities within the State of Idaho.

(d) As an entity which has a nationwide collection agency practice, Dun & Bradstreet is engaged in interstate commerce.

(e) As a permittee, Dun & Bradstreet, Inc., is required under the provisions of Section 26–2223A, Idaho Code, to maintain an office within the State of Idaho. This office is maintained in Boise, Idaho, and must be open to the public during normal business hours on each business day under the provisions of this section of the Idaho Code. Dun & Bradstreet is required to employ a resident of the State of Idaho who has passed the examination for a permit required by Section 26–2229, Idaho Code, to be personally and actively in charge of the business of Dun & Bradstreet, Inc., carried on at their office. In addition, the resident employee must have a license as required by Section 26–2240, Idaho Code.

(f) Tom D. McEldowney and employees of the Department of Finance of the State of Idaho have interpreted the provisions of Chapter 22, Title 26, Idaho Code, to prohibit Dun & Bradstreet, Inc., and other collection agencies from soliciting for collection the accounts of creditors within the State of Idaho through the use of the mails of the United States or telephone from outside the State of Idaho, or effecting the collection of creditors' accounts assigned to Dun & Bradstreet, Inc., or other collection agencies for collection (except by forwarding such accounts to collection agencies licensed and located in the State of Idaho) through the use of the mails of the United States or telephone from outside the State of Idaho.

## QUESTIONS PRESENTED

The following issues of law, and no others, are presented by this action:

(a) Whether the provisions of Section 26–2223A, Idaho Code, impose an unreasonable restriction on interstate commerce in violation of the commerce clause, Article I, Section 8, of the Constitution of the United States.

(b) Whether the provisions of Section 26–2242(8), Idaho Code, impose an unreasonable restriction on interstate commerce in violation of the commerce clause, Article I, Section 8, of the Constitution of the United States.

(c) Whether the interpretation of Chapter 22, Title 26, Idaho Code, made by Tom D. McEldowney and employees of the Department of Finance of the State of Idaho, that a collection agency permittee and its employees are prohibited from soliciting for collection the accounts of creditors within the State of Idaho through the use of the mails of the United States or telephone from outside the State of Idaho, and that a collection agency permittee and its employees are prohibited from effecting the collec-

tion of creditors' accounts assigned to such permittee for collection (except by forwarding the account to a collection agency licensed and located in the State of Idaho) through the use of the mails of the United States or telephone from outside the State of Idaho, imposes an unreasonable restriction on interstate commerce in violation of the commerce clause, Article I, Section 8, of the Constitution of the United States.

## IDAHO CODE SECTIONS AND INTERPRETATIONS CHALLENGED

Idaho Code, Section 26–2223A, reads as follows:

> 26–2223A. Office to be maintained in state.—Every permittee under this act must maintain an office in the state of Idaho at each location for which a permit is issued. Each office must be open to the public during normal business hours on each business day, provided, however, that the director may in his discretion approve a request for opening at hours other than normal business hours or a portion of a business day. A business day within the meaning of this section does not include Saturdays, Sundays, or legal holidays. Each permittee · under this act must designate a person to be personally and actively in charge of the business carried on at any office for which a permit is held. No office may be operated by a permittee under this act unless the person who is personally and actively in charge of the operation of an office doing business under this act passes the examination for a permit required by section 26–2229, Idaho Code, provided that persons operating under a valid collection agency permit on July 1, 1974 shall not be required to comply with this requirement until July 1, 1976.

Section 26–2223A requires every permittee to maintain an office in the State of Idaho at each location for which a permit is issued, and requires each permittee to designate a person to be personally and actively in charge of the business carried on at such office. The Department of Finance has interpreted this section to require that a collection agency permittee conduct its business from its designated Idaho office(s). This interpretation prohibits any collection agency from either soliciting accounts from Idaho creditors or attempting to effect collections from Idaho debtors from any location outside the State of Idaho, since business must be conducted from the location for which a permit has been issued, and no permit will be issued for a location outside the State of Idaho. This interpretation also prohibits any collection agency from conducting its business from any location *within* the State of Idaho for which no permit has been issued.

The plaintiff also challenges the constitutionality of Section 26–2242(8), Idaho Code, which reads as follows:

> 26–2242. Grounds for refusal to issue license.—A license may be refused and, after notice and hearing, be denied, revoked or the renewal thereof refused by the director if he finds that the holder of or the applicant for such license:
>
> . . . .
>
> (8) Is not a bona fide resident of this state; . . .

A "licensee" is:

> any person licensed by the director who is employed by a collection agency and whose primary function is as a solicitor engaged in collection or receiving payment or soliciting the receiving or collection of payment for others of any account, bill or other indebtedness for the collection agency.

Idaho Code, § 26–2222(7).

The license requirement is contained in Section 26–2240, Idaho Code, which provides in part:

> (1) No person shall act as a licensee of any firm, company or person holding a permit under this act without first obtaining a license to do so.

Article I, Section 8, of the United States Constitution reads in pertinent part: "The Congress shall have Power . . . To regulate commerce . . . among the several States . . ."

## ANALYSIS

The commerce clause of the United States Constitution can erect a barrier to state action where Congress has exercised its constitutional power to regulate commerce among several states, and has indicated its policy to which contrary or inconsistent state action must give way by reason of the commerce clause and also by reason of the supremacy clause. The commerce clause can also erect a barrier when Congress by inaction has remained silent or has taken no action setting forth its policy on a given subject matter. In these latter situations a challenge or objection to state authority would rest entirely on the "dormant" commerce clause of Article I, Section 8, or on the unexercised commerce power itself. The plaintiff points out that the accepted "modern test" is stated in *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970):

> Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. (citations omitted) If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

The defendant submits that the challenged statutes and the interpretation thereof by the Department of Finance, will pass constitutional muster under the *"Pike* balancing test."

The defendant argues that the instant case falls within a third category wherein Congress enacted the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §§ 1692–1692o, which legislates in the same area regulated by the Idaho Collection Agency Law.

The FDCPA, in Section 1692n of 15 U.S.C., contains the following provision:

> This title does not annul, alter, or affect, or exempt any person subject to the provisions of this title from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this title, and then only to the extent of the inconsistency. For purposes of this section, a State law is not inconsistent with this title if the protection such law affords any consumer is greater than the protection provided by this title.

The defendant states that an express congressional recognition of rights of states to legislate in a particular area would be dispositive in that Congress has expressly approved of stricter state laws in the field of collection agency regulation; therefore, ordinary "dormant" commerce clause analysis does not apply to such regulation and the statutes and interpretation which are the subject of the instant case do not contravene the commerce clause of the United States Constitution.

However, plaintiff argues that it is a commercial collection agency and that the FDCPA has application only to consumer collection agencies. An analysis of the challenged statutes and the interpretation thereof, varies depending upon whether the FDCPA is applicable to commercial collection agencies.

At oral argument, neither party could point to a judicial determination of the applicable difference as between consumer collection agency and commercial collection agency. Thus, this issue appears to be one of first impression. Defendant maintains that since FDCPA refers to debt collection agencies and debt collectors, the Act applies to the Idaho legislation in question and thus provides the state a greater flexibility in dealing with the regulation of debt collections than if Congress had been wholly silent on the matter. Dun & Bradstreet counters that the legislative history of the Act explicitly limits the application of the Act to consumer collection agencies as opposed to commercial collection agencies.

In reviewing the legislative history of the FDCPA, it is apparent that the bill was intended to apply only to consumer collection agencies:

## NATURE AND PURPOSE OF THE BILL

This legislation would add a new title to the Consumer Credit Protection Act entitled the Fair Debt Collection Practices Act. Its purpose is to protect *consumers* from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors.... (emphasis added)

S.Rep. No. 382, 95th Cong., 1st Sess. 1–2, *reprinted in* 1977 U.S.Code Cong. & Ad. News 1695, 1696.

Later, in the same Senate Report under "Explanation of the Legislation," the report reads: "This bill applies only to debts contracted by consumers for personal, family, or household purposes; it has no application to the collection of commercial accounts." *Id.* at 3, and 1697. The legislative history clearly indicates that the statute was intended to apply only to consumer debts. While this construction of the statute may lead to some ambiguity in that consumer and commercial debts are difficult to separate from a legislative standpoint, the only interpretation available to this court is that presented by Plaintiff Dun & Bradstreet. Therefore, this court finds that the FDCPA applies only to consumer debt collection agencies and is therefore inapplicable to this action. The analysis of the challenged legislation will thus proceed on the basis that Congress has not addressed the question of commercial collection agencies.

## THE IN–STATE OFFICE REQUIREMENTS

The defendant argues that the office requirement as provided for in Section 26–2223A and the communications requirement set forth in the finance director's interpretation and requirements cannot be discussed separately for if the statute falls, the interpretation must therefore fall, and conversely, if the in-state office requirement is con-stitutionally valid, the interpretation is likewise valid. Because two distinct questions are presented by the in-state office requirement and the interpretation thereof, the court will consider each question separately.

The plaintiff contends that the requirement of an in-state office is an impermissible burden on interstate commerce and should be declared unconstitutional. Plaintiff asserts that the statute would be a restraint on interstate commerce as applied and is thus per se unconstitutional. In support of the per se unconstitutional argument, plaintiff cites *Philadelphia v. New Jersey,* 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978), and *Lewis v. BT Invest. Managers, Inc.,* 447 U.S. 27, 100 S.Ct. 2009, 64 L.Ed.2d 702 (1980). In the alternative, plaintiff argues that if the statute passes the constitutional per se challenge, the in-state office requirement should be analyzed under the balancing test set forth in *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970), and thus declared constitutionally impermissible.

From a study of the statute, it appears that the requirement applies even-handedly both to Dun & Bradstreet and each and every other collection agency that may be operating in the State of Idaho. It is evident that the statute requires Dun & Bradstreet (or any other collection agency) to maintain an office within the State of Idaho, and that its manager must be personally familiar with correspondence and communications that would involve Idaho debtors. However, in *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978), the United States Supreme Court stated that, "the commerce clause protects the interstate market, not particular interstate firms, from prohibitive or burdensome regulation." *Id.* at 127–28, 98 S.Ct. at 2215. Thus, the Court does not view the statutory requirements to be per se unconstitutional.

Since the statute is not per se unconstitutional, the applicable test is that laid out in *Pike v. Bruce Church, Inc.,* 397 U.S.

137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). In *Pike,* the Court held that:

> Where the [state] statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree.

*Id.* at 142, 90 S.Ct. at 847 (citations omitted). *Pike* thus requires a balancing between the state's interest in the regulation and the burden it imposes on interstate commerce.

Plaintiff asserts that *Pike* is indistinguishable from the case at bar. In *Pike,* Arizona cantaloupe growers challenged an Arizona law which required that all fruit grown in the state be processed there too. In striking down the legislation, the Supreme Court found that they "viewed with particular suspicion state statutes requiring business operations to be performed in the home State that could more efficiently be performed elsewhere. Even where the State is pursuing a clearly legitimate local interest, this particular burden on commerce has been declared to be virtually per se illegal." 397 U.S. at 145, 90 S.Ct. at 849 (citations omitted). Plaintiff contends that *Pike* is directly on point and that it therefore controls. However, it must be noted that the Court did not find in-state office requirements per se illegal. It is critical to the analysis of *Pike* to understand what the putative benefit of the legislation is. The Court in *Pike* found that, "[t]he impetus for the Act was the fear that some growers were shipping inferior or deceptively packaged produce, with the result that the reputation of Arizona growers generally was being tarnished and their financial return concomitantly reduced." *Id.* at 143, 90 S.Ct. at 848. The Court in striking down the legislation held that, "[s]uch an incidental consequence of a regulatory scheme *could perhaps be tolerated if a more compelling state interest were involved.*" *Id.* at 146, 90 S.Ct. at 849 (emphasis added). The question thus before the court is whether Ida-ho's interest in regulating collection agencies is compelling enough to require the incidental consequences of its regulatory scheme.

In this situation the court finds that the putative benefit of Idaho's regulatory scheme outweighs the incidental consequences incurred by collection agencies and upholds Idaho Code § 26–2223A (1977). In *Pike,* the putative rationale was to protect the reputation of Arizona cantaloupe growers. In the case at bar, the putative rationale is to regulate collection agencies. To this end, the policy adopted by the Idaho Legislature in enacting Chapter 26, Title 22, Idaho Code, is to protect Idaho debtors, be they consumer or commercial, from abusive, unethical, and unfair practices by collection agencies.

Regulation of consumer collection agencies was deemed important enough for the United States Congress to intervene and pass legislation regulating consumer collection agencies. Even though this court is unpersuaded that the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692*o* (Supp. IV 1980), is applicable in this instance, the court finds that much of the rationale for the FDCPA is germane to the discussion of the putative need for such legislation. As Congress has declared:

> There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

15 U.S.C. § 1692(a) (Supp. IV 1980).

The court is of the opinion that the rationale contained in FDCPA enacted by Congress applies in a commercial debt collection setting as well. Although Congress did limit the FDCPA to consumer debt collection, certainly abusive, unfair, or unethical practices are not limited just to consumer collection agencies. Regulation of commercial debt collection practices is a sufficiently compelling state interest to meet the

*Pike* balancing test, and consequently, justifies the state's adopted policy. The court finds that the challenged statute is constitutionally permissible.

## LIMITATION ON INTERSTATE COMMUNICATION: THE INTERPRETATION BY THE DIRECTOR OF THE DEPARTMENT OF FINANCE

■ The defendant argues that the director's interpretation of Idaho Code § 26–2223A is a correct statutory construction. The director's interpretation requires that all communications from Dun & Bradstreet to Idaho debtors, whether by mail or telephone, must emanate from within Idaho. The department relies on a portion of Section 26–2223A which requires: "Each permittee under this act must designate a person to be personally and actively in charge of the business carried on at any office for which a permit is held." The department argues that by reason of the above a significant part of the business of a collection agency permittee is the solicitation of accounts and collection of debts. Both of these functions involve sending letters or making phone calls, and that if a person is to be personally and actively in charge of the business carried on at the office, that must mean that he is in charge of the very important business of communicating with creditors and debtors.

With this, the court does not agree, as this interpretation certainly stretches a new meaning and a new concept into what the statute actually says. By restricting the plaintiff to initiating all communication either by letter or by phone intrastate and thus forbidding the permittee company any interstate communications in soliciting creditors' accounts at least, certainly interferes with interstate commerce. Such a statutory construction is constitutionally impermissible as a regulation or restriction. It is not a proper rationale, from a common sense standpoint or from a regulatory standpoint, to so restrict the plaintiff's communication network and coordination of its business affairs in soliciting creditors' accounts or, for that matter, in communicating with debtors.

## RESIDENCY REQUIREMENT OF LICENSEE

Dun & Bradstreet also challenges the constitutionality of Idaho Code § 26–2242(8) (1977). In order to understand plaintiff's challenge of this statute, it is necessary to read various portions of Title 26, Idaho Code. The pertinent portions of these statutes read as follows:

26–2242. Grounds for refusal to issue license.—A license may be refused and, after notice and hearing, be denied, revoked or the renewal thereof refused by the director if he finds that the holder of or the applicant for such license:

. . . .

(8) Is not a bona fide resident of this state; . . .

The crux of plaintiff's challenge is that this statute in requiring residency in the State of Idaho as a prerequisite to operating a collection agency in this state imposes an impermissible burden on interstate commerce. Plaintiff argues that a residency requirement such as that in Idaho Code § 26–2242(8) discriminates on its face and thus is presumed to be unconstitutional. In support of that argument, plaintiff cites *Philadelphia v. New Jersey*, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978); *Service Machine & Shipbuilding Corp. v. Edwards*, 617 F.2d 70 (5th Cir.), *aff'd*, 449 U.S. 913, 101 S.Ct. 310, 66 L.Ed.2d 142 (1980); *Smith v. Dept. of Agriculture of the State of Georgia*, 630 F.2d 1081 (5th Cir.1980); *Duchess Sanitation v. Town of Plattekill*, 51 N.Y.2d 670, 435 N.Y.S.2d 962, 417 N.E.2d 74 (N.Y.1980).

■ However, in a close reading of Idaho Code § 26–2242(8), it is noted that the requirement of residency of a licensee is discretionary with the Director of the Department of Finance. The plaintiff does not actually make any showing that the residency requirement has in fact had an impact or burden on either interstate commerce or upon the plaintiff. Just as an in-state office requirement applies even-

handedly to a permittee, so too does a requirement of residency as a condition for the license of a licensee, even though such residency requirement is discretionary with the Director of the State Department of Finance. The court is of the opinion, therefore, that the impact of a residency requirement on the licensee is incidental. The court makes no finding that the statute is constitutional or unconstitutional as it applies to an individual licensee applicant who may challenge the residency requirement. The residency requirement is merely incidental as it applies to Dun & Bradstreet. In viewing the legislative scheme as a whole, the court is of the opinion that an in-state office requirement required of the permittee, along with a requirement that a representative licensee be a resident of Idaho, serves a legitimate state purpose wherein it serves to protect Idaho debtors from unfair debt collectors and also presents a means by which the director of finance may properly regulate collection agencies as permittees and the representative licensee.

IT IS THEREFORE ORDERED that plaintiff's motion for a declaratory judgment declaring Idaho Code § 26–2223A as unconstitutional, should be, and the same is hereby, DENIED.

IT IS FURTHER ORDERED that plaintiff's motion for a declaratory judgment declaring that the interpretation of the statute requiring intrastate communications and excluding interstate communications is constitutionally impermissible, should be, and the same is hereby, GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion for declaratory judgment declaring Idaho Code § 26–2242(8) unconstitutional should be, and the same is hereby, DENIED.