COMMONWEALTH *vs*. ALLIED BOND AND
COLLECTION AGENCY.

Suffolk.   February 4, 1985. — April 18, 1985.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Collection Agency. Interstate Commerce.*

General Laws c. 93, § 24, and regulations promulgated thereunder, when
    applied to require an out-of-State consumer debt collection agency, con-
    ducting its business solely by interstate mail and telephone, to obtain a
    license under § 24 and to maintain an office within the Commonwealth,
    did not impose an impermissible burden on interstate commerce, where
    the interest of the Commonwealth in requiring local licensing and in the
    maintenance of a local office was substantial, and where the burden
    imposed on interstate commerce was not shown to be clearly excessive
    in relation to the local benefits sought to be obtained. [610-617]

CIVIL ACTION commenced in the Superior Court on March
23, 1977.

The case was reported to the Appeals Court by *Andrew R.
Linscott*, J. The Supreme Judicial Court granted a request for
direct review.

*Steven E. Kramer*, Assistant Attorney General (*Richard C.
Allen*, Assistant Attorney General, with him) for the Common-
wealth.

*Robert S. Brintz* (*Linda J. Kline & Timothy P. Wickstrom*
with him) for the defendant.

WILKINS, J. We are presented with the question whether the
Commonwealth, consistent with the commerce clause of the
Constitution of the United States (art. I, § 8, cl. 3), may require
an out-of-State consumer debt collection agency, conducting
its business solely by interstate mail and telephone, to obtain
a license under G. L. c. 93, § 24, and to maintain an office
within the Commonwealth pursuant to a regulation of the Com-
missioner of Banks. 209 Code Mass. Regs. § 18.05 (1980).

We conclude that the commerce clause does not bar application of those requirements to the defendant collection agency.

The defendant Allied Bond and Collection Agency (Allied) is a sole proprietorship, owned by a Pennsylvania resident, having its only office in Trevose, Pennsylvania. Allied has never sought a Massachusetts license nor has it ever had an office in Massachusetts. It does business as a collection agency, in all fifty States and in several United States territories and foreign countries, on behalf of corporate clients. All Allied's contracts with Massachusetts debtors are carried on exclusively through interstate mail and telephone from its Pennsylvania office. No Allied employee has been sent to this State for any purpose. Allied, as well as the entire consumer debt collection industry, is regulated by the Federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692o (1982). More than half of the debts that Allied has sought to collect from Massachusetts residents were incurred in this State. Most of the debts collected from Massachusetts debtors were consumer debts. In 1979, Allied attempted to collect more than $1,000,000 in debts from approximately 3,560 Massachusetts debtors. It succeeded in 1979 in collecting approximately $200,000 from 633 such debtors. In that year, Allied earned as net income after taxes approximately $4,000 from these collection activities. The Massachusetts portion of Allied's activities represented between 2% and 3% of its total business. All Allied's records are kept at its Pennsylvania office. It does not customarily keep records on a State by State basis. Of the 167 collection agencies licensed in Massachusetts, twenty-seven have home offices outside the State. Each of the out-of-State agencies maintains a Massachusetts office.

In this action, the Commonwealth, through its Attorney General, seeks to require Allied to obtain from the Commissioner of Banks (commissioner) "a license to carry on" its business as a collection agency as required by G. L. c. 93, § 24. In addition, the Commonwealth seeks to enforce the requirement of 209 Code Mass. Regs. § 18.05 that Allied maintain an office in the Com-

monwealth.[1] Pursuant to G. L. c. 93, § 24C, the commissioner may investigate collection records of a licensee, and a licensee must provide the commissioner free access to its books and records relating to the collection of debts.

A judge of the Superior Court reported the case to the Appeals Court on the parties' cross motions for summary judgment, accompanied by a statement of certain agreed facts and affidavits. We allowed the parties' joint application for direct appellate review. Allied presents a series of arguments in the alternative that the Commonwealth's licensing and local office requirements impermissibly burden interstate commerce. We reject each of them.

1. *Per se invalidity.* Allied first argues that, because its business is conducted solely in interstate commerce, the commerce clause forbids the State from requiring it to obtain a

---

[1] 209 Code Mass. Regs. § 18.05 provides:

"A collection agency shall not share quarters or office space with an attorney actively engaged in the practice of law, constable, private detective, regular or special police officer or any other law enforcement officer. A collection agency engaged mainly or preponderantly in the collection of retail accounts against consumer debtors shall maintain an office in the Commonwealth. No change in the location of such office in Massachusetts shall take place without written approval of the Commissioner, but such approval shall be deemed granted if no objection is made by the Commissioner within 30 days after written notification of intended change of location of office. Where no office of a licensee is required to be maintained in Massachusetts, if there is any change in the location of that licensee's office outside the Commonwealth, notice thereof shall be given to the Commissioner forthwith.

"A collection agency engaged mainly or preponderantly in the collecting of retail accounts against consumer debtors shall file with the Commissioner a schedule of days and hours the office will be open. Any change in such schedule shall be reported to the Commissioner at least 5 days before such change shall become effective."

Additionally, 209 Code Mass. Regs. § 18.09, concerning books and records, provides in part:

"The Commissioner shall require the collection agency to keep books and records, and upon reasonable notice to the collection agency to produce such records, as will enable the Commissioner to determine whether the provisions of law and regulations are being complied with. However, a collection agency engaged mainly or preponderantly in the collection of retail accounts against consumer debtors shall maintain on the licensed premises such books and records, or copies thereof, as will disclose debts and amounts of payments from debtors and remittances made to creditors."

license and to maintain an office in Massachusetts. It claims that the State's attempted regulation is per se invalid, relying on cases involving defendants' unsuccessful claims that actions against them were barred because the plaintiffs did not obtain or file necessary certificates to do business in the forum State. See, e.g., *Allenberg Cotton Co.* v. *Pittman*, 419 U.S. 20 (1974); *Goodwin Bros. Leasing* v. *Nousis*, 373 Mass. 169 (1977). In such cases, the "door closing" State statutes were held to be an undue burden on interstate commerce because of the interstate character of the transactions involved.

Although the principle of the *Allenberg* case has been applied subsequently in similar cases (see *Diversacon Indus., Inc.* v. *National Bank of Commerce*, 629 F.2d 1030, 1033-1034 [5th Cir. 1980]; *Uncle Ben's, Inc.* v. *Crowell*, 482 F. Supp. 1149, 1154-1155 [E.D. Ark. 1980]), the fact that an enterprise's activity is exclusively in interstate commerce does not bar State regulation in all circumstances. For example, in a series of Federal cases in which an exclusively interstate mail order seller challenged the application to it of State limitations on maximum credit charges in consumer credit transactions, every court that considered the matter held that the commerce clause did not forbid the application of local law. See *Aldens, Inc.* v. *Miller*, 466 F. Supp. 379, 382-383 (S.D. Iowa), aff'd, 610 F.2d 538 (8th Cir. 1979), cert. denied, 446 U.S. 919 (1980); *Aldens, Inc.* v. *Ryan*, 571 F.2d 1159, 1162 (10th Cir.), cert. denied, 439 U.S. 860 (1978); *Aldens, Inc.* v. *LaFollette*, 552 F.2d 745, 752-753 (7th Cir.), cert. denied, 434 U.S. 880 (1977); *Aldens, Inc.* v. *Packel*, 524 F.2d 38, 49-50 (3d Cir. 1975), cert. denied, 425 U.S. 943 (1976).

Allied itself has unsuccessfully challenged the right of Connecticut to require it to obtain a license as a consumer collection agency. *Silver* v. *Woolf*, 538 F. Supp. 881 (D. Conn.), aff'd, 694 F.2d 8 (2d Cir. 1982), cert. denied, 460 U.S. 1070 (1983).[2] Before the Court of Appeals, Allied relied on per se argument challenging Connecticut's power to regulate interstate commerce but did not, as here, alternatively argue that the State's

---

[2] The action was brought in the name of Herbert T. Silver d/b/a Allied Bond and Collection Agency.

licensing requirement itself imposed an onerous burden in relation to any reasonable purpose the State may have. *Silver* v. *Woolf,* 694 F.2d at 11-13. The Court of Appeals for the Second Circuit distinguished the *Allenberg* case because of significantly different contacts between the interstate business and the State in the two situations and further because Congress has indicated the desirability of State regulation of debt collection agencies but has not similarly spoken concerning limitations on lawsuits brought by interstate businesses. *Id.*

Where Congress has not legislated in the field and the circumstances do not require a uniform national rule, the question whether the burden on interstate commerce is undue turns on the effect of the State regulation on interstate trade in relation to the justification asserted by the State in support of its regulation. See *Aldens, Inc.* v. *LaFollette, supra* at 752; *Aldens, Inc.* v. *Packel, supra* at 45-46. A regulation such as a "door closing" statute may be deemed per se undue as to a purely interstate trader "because of a pernicious effect on interstate trade without a correspondingly high state justification." *Aldens, Inc.* v. *LaFollette, supra* at 752. Congress has not explicitly legislated concerning the scope of State regulation of collection agencies, but it has concluded that no uniform national law is needed, acknowledging the right of a State to impose stricter regulations concerning such agencies than are imposed by Federal law. 15 U.S.C. § 1692n (1982).[3] This Congressional action alone warrants distinguishing the "door closing" cases on which Allied relies. See *Silver* v. *Woolf,* 694 F.2d at 13; *Aldens, Inc.* v. *Packel, supra* at 50. Moreover, the burden on commerce is significantly less and the State's

---

[3] This section of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692o (1982), provides:

"This subchapter does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency. For purposes of this section, a State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this subchapter."

interest in regulation of the activity involved is significantly greater in the case before us than in cases involving closing the door to litigation to foreign corporations. See *Silver* v. *Woolf,* 694 F.2d at 12. The majority of the consumer debts that Allied seeks to collect from Massachusetts debtors arose from consumer transactions occurring in Massachusetts and the effect of Allied's collection practices on Massachusetts debtors will be entirely local. See *id.*

We shall return to a similar analysis of the licensing and local office requirements in the third section of this opinion, when we discuss the balancing test employed by the Supreme Court of the United States in deciding certain commerce clause cases. See *Pike* v. *Bruce Church, Inc.,* 397 U.S. 137, 142 (1970). The per se invalidity cases may fairly be analyzed as extreme cases in which the burden on commerce is substantial and undue in relation to the asserted State interest in regulation. See *Aldens, Inc.* v. *LaFollette,* 552 F.2d at 752.

2. *Discriminatory effect.* Allied argues that, if the licensing and local office requirements are not per se invalid when applied to an interstate trader, they nevertheless impose an unequal burden on out-of-State collection agencies as compared to Massachusetts-based collection agencies. This argument is expressed in large measure against the local office requirement, and correctly so because there is no significant basis for contending that the license requirement has a discriminatorily uneven effect on out-of-State collection agencies as against in-State agencies. Here, the claim is that the requirement that an out-of-State collection agency establish a second office, and accordingly, it is said, incur a burden not shared by Massachusetts agencies, discriminates in favor of local agencies and against Allied and other out-of-State agencies.

On its face, the local office requirement has no element of "simple protectionism" but rather "regulates evenhandedly" (see *Minnesota* v. *Clover Leaf Creamery Co.,* 449 U.S. 456, 471 [1981]), requiring every person who conducts an agency mainly to collect retail accounts against consumer debtors to maintain an office in Massachusetts. Allied's claim is, however, that this requirement in its application involves impermis-

sible economic protectionism, even if undertaken in the pursuit of a clearly legitimate local interest, by "requiring business operations to be performed in the home State that could more efficiently be performed elsewhere." *Pike* v. *Bruce Church, Inc.,* 397 U.S. at 145. Such a "burden on commerce has been declared to be virtually *per se* illegal." *Id.*

In assessing the merits of this contention, we must look to the precise requirements of the local office regulation. The regulation demands only that Allied maintain an office in Massachusetts. 209 Code Mass. Regs. § 18.05. There is no requirement as to its size, to its location in the State, or to the days and hours the office must be open. Although Allied is barred from sharing office space with certain persons (such as practicing attorneys, constables, or law enforcement officers), *id.,* the implication is clear that it may share space with others. All that the office must provide on its premises are "such books and records, or copies thereof, as will disclose debts and amounts of payments from debtors and remittances made to debtors." 209 Code Mass. Regs. § 18.09, first paragraph. Although the Commonwealth's brief suggests that debtors, as well as regulatory officials, will have access to those records at the Massachusetts office, the regulation does not expressly so provide. There is nothing in the record concerning how the regulation has been applied. On its face, it requires only that Allied need provide a part-time employee or other agent to respond to regulatory inspections on days and at times when the office is open. None of Allied's debt collection activities must be carried on in this State, and any such requirement would probably be an undue burden on interstate commerce. See *Dun & Bradstreet, Inc.* v. *McEldowney,* 564 F. Supp. 257, 264 (D. Idaho 1983). Thus no business operations that could be more efficiently performed in Pennsylvania are required to be performed in Massachusetts. See *Pike* v. *Bruce Church, Inc.,* 397 U.S. at 145.

Allied has not met its burden of showing that the local office requirement involves the kind of economic protectionism or discrimination that the Supreme Court has held burdens interstate commerce unduly. For such cases, see *Minnesota* v.

*Clover Leaf Creamery Co.*, 449 U.S. 456, 472 (1981), and cases cited. As to the burden of proof, see *Hughes* v. *Oklahoma,* 441 U.S. 322, 336 (1979). The local office requirement is imposed only to the extent necessary to permit the commissioner to carry out his regulatory obligations and visits its effects equally upon interstate and local business. See *Lewis* v. *BT Inv. Managers, Inc.*, 447 U.S. 27, 36 (1980). In such a case, a balancing test is appropriate, involving consideration of the practical operation of the local regulation and the narrowness with which it is drawn. *Id.* at 36-37. We turn to this question.

3. *The balancing test.* Allied argues that, even if the licensing and local office requirements are not per se invalid (see part 1 above) or virtually per se invalid (see part 2 above), the burden imposed on commerce is undue in relation to the supposed local benefits of the licensing and local office requirements. The Supreme Court has defined the general rule that has emerged from its cases as follows: "Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. *Huron Cement Co.* v. *Detroit,* 362 U.S. 440, 443 [1960]. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." *Pike* v. *Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

We have already described the limited burden imposed by the local office requirement and have further noted the even less burdensome licensing requirement. We know from the record that twenty-seven out-of-State collection agencies are licensed by and maintain local offices in Massachusetts. The test is whether interstate commerce is burdened generally, and not whether the degree of burden on a specific plaintiff is undue. See *Exxon Corp.* v. *Governor of Md.*, 437 U.S. 117, 127-128 (1978). The assertion that Allied could not economic-

ally maintain a Massachusetts office is, therefore, not sufficient, even if true, to prove an undue burden on interstate commerce. Even if Allied's own circumstances were relevant, the record does not sufficiently show that Allied could not afford the costs of licensing and of the limited office it must maintain. Thus the extent of the burden on interstate commerce has not been shown to be substantial.

Against the asserted burden, we must weigh the nature of the local interest and determine whether there is a less burdensome alternative available. The interest of Massachusetts in the proper conduct of agencies seeking to collect consumer debt is obvious. Congress has recognized States' interest in such matters. See 15 U.S.C. § 1692n (1982); *Silver* v. *Woolf*, 538 F. Supp. 881, 889 (D. Conn.), aff'd, 694 F.2d 8 (2d Cir. 1982), cert, denied, 460 U.S. 1070 (1983); *Dun & Bradstreet, Inc.* v. *McEldowney*, 564 F. Supp. 257, 263 (D. Idaho 1983). It is shown by affidavit that the commissioner has concluded that, in order to protect the citizens of the Commonwealth adequately and to examine the books and records of a licensee, it is necessary that the licensee maintain a Massachusetts office and keep adequate books and records in that office. He has further concluded that it would not be feasible to send examiners throughout the country. The commissioner generally conducts unannounced examinations and believes that examination of books and records submitted by a licensee on request is not practical from an auditing standpoint. Allied makes no argument that a procedure of some sort for examining books and records is unreasonable. There is no demonstrated alternative method of achieving the commissioner's inspection goals.

We thus conclude that the interest of the Commonwealth in requiring local licensing and in the maintenance of a local office is substantial and that the burden imposed on interstate commerce is not shown to be clearly excessive in relation to the local benefits sought to be obtained. In similar circumstances, a licensing requirement has been upheld. *Silver* v. *Woolf*, 694 F.2d 8 (2d Cir. 1982). An in-State office requirement for an out-of-State commercial (not consumer) collection agency was upheld against a commerce clause challenge in

*Dun & Bradstreet, Inc.* v. *McEldowney*, 564 F. Supp. 257, 262-264 (D. Idaho 1983). That case also upheld a statutory requirement, as interpreted by the court, that the agency maintain an office open to the public on each business day, operating under a State-licensed manager personally familiar with correspondence and communications involving forum State debtors (*id.*), burdens not imposed by this Commonwealth.

4. *Cumulative burden.* Allied finally argues that the cumulative burden of the requirements of the various States impermissibly burdens interstate commerce. As we have noted, Congress has sanctioned State regulations stricter than those imposed on collection agencies by Federal law. 15 U.S.C. § 1692n (1982). Allied has not shown, as it must, that the consumer debt collection industry as a whole is unduly burdened by a multitude of State regulations. *Exxon Corp.* v. *Governor of Md.*, 437 U.S. at 127-128. Moreover, it is not apparent that the various State regulations are inconsistent in an impermissibly burdensome way and, in any event, it is not shown that the Massachusetts licensing and local office requirements (the only regulatory elements challenged in this case) contribute unreasonably to the collective burden. In short, although in some cases there may be an undue burden on interstate commerce from local regulations inconsistent with the flow of interstate activities (see, e.g., *Bibb* v. *Navajo Freight Lines, Inc.*, 359 U.S. 520, 529 [1959]), this record does not show that the aggregate effect of State regulation is prohibitive as to interstate debt collection agencies. See *Silver* v. *Woolf*, 694 F.2d 8, 14 (2d Cir. 1982).

5. *Conclusion.* Judgment shall be entered in the Superior Court declaring that the licensing requirement of G. L. c. 93, § 24, is lawful as applied to the Allied Bond and Collection Agency and that the requirement of 209 Code Mass. Regs. § 18.05 that the Allied Bond and Collection Agency maintain a business office in the Commonwealth is similarly lawful. We

leave it to that court to determine (a) the time within which Allied Bond and Collection Agency must comply with the law or cease collection activities with respect to Massachusetts debtors and (b) the question whether an injunction should issue.

*So ordered.*