CHARLES JOEL GLOVSKY vs. HOLLY POINT ESTATES, INC.
& others
(and a companion case [1]).

Barnstable.  January 5, 1968. — April 1, 1968.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & REARDON, JJ.

*Contract*, What constitutes, For sale of real estate.  *Equity Jurisdiction*,
Specific performance.  *Real Property*, License.  *Error*, Whether error
harmful.

Where it appeared in a suit in equity that after negotiations for sale of a
large tract subdivided into many lots, a written sale and purchase
contract was executed by the seller but not by the buyer, who never-
theless paid the seller a sum specified in the contract as the first in-
stalment of the purchase price and, with the permission of the seller,
built a model home on one of the lots, it was held that in the circum-
stances the parties never looked to a sale of such one lot for the sum
paid by the buyer but only to a written contract for sale of the entire
tract, that no contract came into existence, and that the buyer was
entitled to repayment of the amount paid by him but was not entitled
to a conveyance of the one lot, was at most a licensee in building the
model home thereon, and was required to remove it therefrom at his
own expense. [97–98]

Any error in the admission of certain testimony at the trial of an action
was harmless where the witness gave essentially the same testimony
later without objection and there was also other similar evidence.
[98]

BILL IN EQUITY filed in the Superior Court on October
19, 1964.

CONTRACT.  Writ in the Superior Court dated October
29, 1964.

The cases were heard by *Hudson*, J.

*Robert M. Bonin* for Joel Glovsky.

*Avram G. Hammer* for Holly Point Estates, Inc. & others.

REARDON, J.  Glovsky brought a bill against Holly Point
Estates, Inc. (Holly), its president, Benjamin Kepnes, and
its treasurer, Hyman Hirsch, seeking transfer to him of a

---

[1] Holly Point Estates, Inc. *vs.* Charles Joel Glovsky.

lot numbered 73 in a large real estate development in the town of Barnstable, or damages in the alternative. Holly brought an action against Glovsky seeking damages in one count of a declaration for breach of contract, and in a second for a dishonored check in the sum of $45,000. The two matters were consolidated for trial and were heard by a judge of the Superior Court who made findings of fact and rulings of law.

In the suit in equity the judge entered a final decree ordering Holly to pay Glovsky the sum of $5,000, plus interest, from the date of the complaint, denying Glovsky's claim to a deed of lot 73, and ordering him to remove from that lot a structure erected thereon by him. All parties appealed from the final decree. In the action at law the judge found for Glovsky. Holly alleged two exceptions in the law action and comes here on a substitute outline bill of exceptions.

Before us it was stipulated that Glovsky has moved the structure formerly on lot 73 and that Holly has, with the exception of that lot, conveyed away the entire tract of which it was a part.

We have before us a full transcript of the evidence and a report of material facts for which the judge adopted his voluntary findings and in which he states, "My findings of facts apply to the law action and the equity action." In the suit in equity we thus apply the customary standards of review. *Willett* v. *Willett*, 333 Mass. 323, 324. *Sulmonetti* v. *Hayes*, 347 Mass. 390, 391. The findings of the judge in summary are as follows.

Holly, a Massachusetts corporation, owned a large tract of subdivided land in Barnstable containing 165 lots and fronting on three great ponds. Additional lots in the subdivision had been sold in previous years and twenty houses had been built on the tract, including one built by Glovsky. Following some negotiations in the spring of 1964, on or about June 13, 1964, Glovsky and Holly agreed orally on a price of $280,000 for the lots, and subsequently an agreement of sale was drafted by Holly's attorney stipulating cer-

tain price ranges for different lots with a provision that waterfront lots should not be conveyed by the buyer for prices less "than acceptable to the seller." The purchase price was to be paid in instalments, $5,000 upon execution of the agreement, $45,000 within ten days thereafter, and the balance within five years from the date of execution. Kepnes and Hirsch signed the agreement on behalf of Holly. Glovsky never did sign the agreement. However, on July 11, 1964, Glovsky gave Holly a check for $5,000 which was cashed four days later. Several weeks thereafter Glovsky sought a deed for lot 73 from Holly but was advised it would not be forthcoming until he signed the agreement. Through a succession of lawyers Glovsky both sought changes in the agreement and continued various phases of the negotiations during which Kepnes and Hirsch gave advice to Glovsky on methods of marketing the lots. On August 1, 1964, a permit issued to Glovsky for the construction of a model home on lot 73. Some $10,000 was expended on this construction which ceased on August 31, 1964. Earlier, on August 7, 1964, Glovsky gave Holly a second check in the sum of $45,000 postdated August 15, 1964, stating upon its delivery that it was to be held until the agreement was signed. His account in the bank on which the check was drawn was "substantially inadequate to cover the payment of this check" from August 7 until August 15, when Holly's attorney presented the check for payment at the bank and was refused payment because of "insufficient funds." There followed on August 31, 1964, a letter from Holly's attorney to Glovsky alleging a breach of the agreement signed by Kepnes and Hirsch and requesting Glovsky to remove the building on lot 73.

The judge concluded that Holly and its officers never agreed to convey lot 73 "as a separate transfer from the entire 165 lots, [that] [t]he check for $5,000.00 . . . was a down payment on the price of the whole tract," that the permission given Glovsky to erect a model home was in furtherance of the project and upon "the assumption that the written agreement would be signed by the parties," that

the receipt of the check for $45,000 was at a time when Holly judged "Glovsky's interest as a purchaser was sustained and sincere," that Glovsky's loss, such as it was, was caused by "his unwise eagerness to 'set up shop' before executing the agreement or his inability to arrange proper financing," and that Glovsky was thus not entitled to a deed to lot 73. In the law action he found that the purpose in giving the $45,000 check was to keep negotiations alive and that at the time of its transfer and subsequently "there was no meeting of the minds as to the agreed upon terms of the contract."

1. Our review of the evidence inclines us to the view of the judge that it was never the intention of the parties that there should, at any time, be a transfer of lot 73 in exchange for the Glovsky check of $5,000. The parties were at all times intent on the purchase and sale of the entire tract and the first check was delivered by Glovsky as an initial step to that end. Since there was never a meeting of the minds, and the draft agreement remained unsigned by Glovsky, equity will act to restore to him that sum which was properly his. See *Flavin* v. *Morrissey,* 327 Mass. 217, 220; *Knowles* v. *Sullivan,* 182 Mass. 318; *Dennett* v. *Perkins,* 214 Mass. 449, 451; *Greeley* v. *Flynn,* 310 Mass. 23, 28; *General Exch. Ins. Corp.* v. *Driscoll,* 315 Mass. 360, 365.

It is argued by Holly that a deposit paid on an oral agreement is forfeited when the prospective buyer refuses to live up to the terms of his bargain. However, the numerous cases cited in support of this proposition are not apt in the circumstances of this case where it was evident throughout that the parties were bent on reducing their final agreement to writing and the execution of a purchase and sale agreement which never took place. The finding of the judge that the terms of the agreement were never settled in the minds of the parties finds support in the transcript. It was based on oral evidence and will not be disturbed unless plainly wrong. *McKellar* v. *Hazen,* 325 Mass. 714, 718–719. See *Cronin* v. *Akeson,* 340 Mass. 767, 769. However, Glovsky is not entitled to costs of removal of the house.

With the permission of Holly he undertook its construction as a gratuitous step in aid of his own objectives and at his own risk. His principal objective in building the model was to advance the sales program which he envisioned following execution of the written agreement. At most he was a licensee. He cannot recover his disbursements. *Nelson* v. *American Tel. & Tel. Co.* 270 Mass. 471, 479–482. *Sturnick* v. *Watson,* 336 Mass. 139, 142–143. See *Van Szyman* v. *Auburn,* 345 Mass. 444, 454, 455. See also *Gray* v. *Handy,* 349 Mass. 438, 442. There was no error in the decree.

2. In the law action Holly has excepted to testimony by Glovsky on direct examination that when he delivered the check for $45,000 to Kepnes he did so stating that the check should remain "uncashed until the satisfactory purchase and sale agreement could be drawn up." However, even on the assumption that it was error to admit this testimony, no injury was done. Essentially the same evidence was given by Glovsky without objection subsequently and there was additional evidence on conditions applicable to the delivery of the check at other points in the trial. *Runels* v. *Lowell Sun Co.* 318 Mass. 466, 469–470. *Commonwealth* v. *Taylor,* 327 Mass. 641, 651. A second exception was taken to the denial of Holly's request for a ruling. It suffices to state that this request was inapplicable to the facts found by the judge, and its denial was proper.

3. In the equity case the final decree is modified by adding a provision dismissing the bill as against the individual defendants with costs and as so modified is affirmed; in the law case the plaintiff's exceptions are overruled.

*So ordered.*