JOHN CATLIN *vs.* BOARD OF REGISTRATION OF
ARCHITECTS.

Suffolk. November 2, 1992. - December 23, 1992.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Architect. Administrative Law*, Agency's interpretation of statute, Summary decision, Record. *Constitutional Law*, Interstate commerce. *Words*, "Prepared."

In a proceeding before the Board of Registration of Architects, the board's interpretation of the word "prepared," as appearing in G. L. c. 112, § 60G (*e*), to mean an architect's authorship of or responsibility for plans on which the architect's seal appears, was not shown to be inconsistent with the board's statutory authority; thus there was no error in the board's determination that a certain architect had not "prepared" certain plans, within the meaning of the statute. [4-5]

There was no merit to an architect's contention that the Board of Registration of Architects did not review the entire record in a disciplinary proceeding before it [5-6]; moreover, there was no showing, in any event, that the architect suffered any harm from the board's alleged failure [6-7].

The evidence, which was undisputed, considered in a disciplinary proceeding before the Board of Registration of Architects was sufficient to support the board's summary decision as a matter of law. [7]

The court expressed its view that G. L. c. 112, § 60G, requiring all design drawings for use in Massachusetts bear the seal of the registered architect who prepared the drawings, does not violate the commerce clause, appearing in art. 1, § 8, of the United States Constitution, where the statute is facially neutral, furthers a legitimate State interest, and does not excessively burden out-of-State architects. [7-9]

The disposition rendered in a disciplinary proceeding before the Board of Registration of Architects was clearly not arbitrary and capricious. [9]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on October 9, 1991.

The case was reported by *O'Connor*, J.

*Michael J. Stone* for the plaintiff.

*Daniel W. Halston*, Assistant Attorney General, for the defendant.

NOLAN, J. On September 12, 1991, after the parties had filed cross motions for summary decision, the Board of Registration of Architects (board) issued a final decision and order which ruled that John Catlin had violated G. L. c. 112, § 60G (*e*) (1990 ed.), by affixing his seal to architectural plans not prepared by either himself or his subordinates. The board suspended for six months Catlin's registration to practice architecture in the Commonwealth, but stayed the suspension and placed Catlin on probation for two years. Pursuant to G. L. c. 112, § 64 (1990 ed.), Catlin appealed from the board's decision. A single justice of this court reserved and reported the case to the full court on the administrative record. After reviewing the record, we conclude that there was no error in the board's decision.

The facts of this case are undisputed. On March 7, 1986, Ziegler Cooper, Inc. (Ziegler Cooper), an out-of-State architectural firm with no member of its staff registered in Massachusetts, contracted with the owners of the Border Cafe Restaurant in Cambridge to provide "schematic designs, design development, interior architectural design, and furnishings

selection services" for a proposed renovation of the restaurant. According to the contract, Ziegler Cooper was to "coordinate with" a local architect regarding site investigations and existing conditions and to confer with regulatory authorities to ensure that the design was in compliance with local building codes. The restaurant owners retained their rights to final review and approval of the designs.

Ziegler Cooper submitted completed plans and drawings to the designated local architect on or about June 3, 1986. A dispute subsequently arose between the restaurant owners and the local architect over whether the plans were in compliance with local codes. The local architect was fired, and Ziegler Cooper eventually contracted with another registered architect, John Catlin. The terms of that agreement provided that Ziegler Cooper was to "prepare construction documentation for the project," and that John Catlin & Associates would be responsible only for "permitting and coordination with local authorities . . . [and] [a]ny necessary field verification and coordination with structural or [mechanical, electrical, and plumbing] engineers for the purpose of completing the construction documentation." Ziegler Cooper informed the restaurant owners of its proposed agreement with Catlin and also informed them that Catlin's seal would appear on the drawings submitted for final permit approval. Catlin reviewed at least two "progress sets" of drawings,[1] made on-site evaluations, met with local building code authorities, and noted revisions in the plans which would be necessary to satisfy the building code. Ziegler Cooper then revised the plans in accordance with Catlin's notations. Catlin affixed his seal on the final drawings which were submitted to the Cambridge building department for approval on October 14, 1986. There is no evidence that either Catlin or his associates drafted any part of the construction documents.

---

[1] In his brief, Catlin claims that he reviewed four different "progress sets" of drawings. We find, however, that the number of Ziegler Cooper's drawings reviewed by Catlin had no significant effect on the board's final decision.

1. *Error of law.* The heart of this dispute is the proper interpretation of the word "prepared" in G. L. c. 112, § 60G (*e*). The statute authorizes the board to "revoke, suspend or annul the certificate of registration . . . or otherwise discipline a registrant, upon proof satisfactory to the board . . . (*e*) that the holder of such certificate of registration has permitted or suffered his official seal to be affixed to any plans, specifications or drawings not *prepared* by him or under his personal supervision by his regularly employed subordinates" (emphasis added). Catlin argues that his actions were proper because he "prepared" the plans within the plain meaning of the statute. He urges that the proper interpretation of "prepared" would include any acts which adapted, qualified, or made ready the plans for use. See Black's Law Dictionary 1182 (6th ed. 1990) ("To provide with necessary means; to make ready . . . ."); Webster's New Int'l Dictionary 1952 (2d ed. 1959) ("To fit, adapt, or qualify beforehand for a particular purpose . . ."). See also *Medlin* v. *Florida State Bd. of Architecture*, 382 So. 2d 708, 710 (Fla. Dist. Ct. App.), cert. denied, 376 So. 2d 71 (Fla. 1979).

We have held that "[w]hile courts should look to dictionary definitions and accepted meanings in other legal contexts . . . their interpretations must remain faithful to the purpose and construction of the statute as a whole" (citations omitted). *Commonwealth* v. *One 1987 Mercury Cougar Auto.*, 413 Mass. 534, 537-538 (1992). Read in conjunction with other provisions in the statute, "prepared" in § 60G excludes the actions taken by Catlin in this case. First, § 60F, which parallels § 60G, provides that "[a] registered architect shall impress his seal on any plans or specifications only if . . . he was the *author* of such plans and specifications or *in responsible charge* of their preparation" (emphasis added). The seal is meant to show authorship of or responsibility for the plans. Catlin was not the author of the plans, nor did he produce the plans in this case; he reviewed not the work of his regularly employed subordinates in his normal place of busi-

ness,[2] but rather plans drawn by an independent architectural firm based outside Massachusetts.[3]

Catlin's reliance on *Deck House, Inc. v. New Jersey State Bd. of Architects*, 531 F. Supp. 633 (D.N.J. 1982) and *Medlin, supra*, is misplaced.[4] The New Jersey statute in *Deck House, supra* at 637-638, is inapposite. The architect in *Medlin*, unlike Catlin, made "substantial changes"[5] in the plans and drew a new site plan for one of the projects. *Medlin, supra* at 710.

Supervision is not enough. The board reads its statutory mandate to require a greater degree of involvement by a registered Massachusetts architect to ensure the safety of the people of the Commonwealth. Thus, without sufficient evidence that the board's interpretation of "prepared" in § 60G is inconsistent with its statutory authority, we defer to the board's judgment. See G. L. c. 30A, § 14 (7).

2. *Procedural error.* Catlin claims that by failing to consider all the evidence in the record and by failing to construe the evidence in the light most favorable to him, the board

---

[2]General Laws c. 112, § 60L (4), does not prohibit unregistered "employees of a registered architect or persons acting under his direction from carrying out their normal duties in the preparation of plans . . . ."

[3]The board's regulations are consistent with our interpretation of the statute. "The architect's official seal . . . is intended for his personal use in connection with plans . . . prepared under his direction for which he will be responsible, and is not transferable." 231 Code Mass. Regs. § 4.02 (2) (1986). "An architect shall use the official seal entrusted to him as prima facie evidence that the plans . . . upon which it appears were *produced* by him, or under his personal supervision. He shall not permit or suffer his official seal to be affixed to any plans . . . not prepared by him or *under his personal supervision in his normal place of business*" (emphasis added). 231 Code Mass. Regs. § 4.02 (3) (1986).

[4]Catlin also cites the unpublished opinion in *Examining Bd. of Architects* v. *Schuurmans*, 99 Wis. 2d 806 (Ct. App. 1980), but we decline to address it.

[5]To the extent Catlin made changes equivalent to those made by the architect in *Medlin* v. *Florida State Bd. of Architecture*, 382 So. 2d 708 (Fla. Dist. Ct. App.), cert. denied, 376 So. 2d 71 (Fla. 1979), we decline to follow the reasoning of the Florida court, and, instead, we base our decision on the particular purpose and construction of the Massachusetts statute.

committed a procedural error sufficient to warrant remand or reversal under G. L. c. 30A, § 14 (7) (*d*) (1990 ed.).[6] Specifically, Catlin charges that the board did not consider portions from the transcript of the trial of a related Federal case referenced in his memorandum in support of his motion for summary decision. To support this charge, Catlin points out that the board's final decision fails to note that an associate in Catlin's office also reviewed the plans and noted necessary revisions and that Catlin's firm as a whole spent approximately sixty hours on the Border Cafe project. This evidence appears in the trial transcript but nowhere in the board's final decision.

The board, however, expressly stated that it relied on the "Chronological Document Index" provided by Catlin, the pleadings, and the briefs of the parties. Since the transcript was part of Catlin's brief, this court will presume that the board reviewed the entire record, absent evidence to the contrary. Although an agency's adjudicative body must *review* all the evidence in the record, it need only *record* findings which were necessary for it to decide the issue and provide the courts with a basis for judicial review. See *Hamilton* v. *Department of Pub. Utils.*, 346 Mass. 130, 137 (1963) (statement of reasons for agency decision required by G. L. c. 30A, § 11 [8]). Thus, the choice by the board or, indeed, by a court not to refer in a decision to a particular piece of evidence does not imply the failure to consider that evidence when ruling on the issue.

Moreover, even if the board did fail to review the trial transcript, this error was harmless. The appealing party has the burden of showing that his "substantial rights . . . may have been prejudiced" by the agency's error. See G. L. c.

---

[6]General Laws c. 30A, § 14 (7) (1990 ed.), reads in part: "The court may affirm the decision of the agency, or remand the matter for further proceedings before the agency; or the court may set aside or modify the decision, or compel any action unlawfully withheld or unreasonably delayed, if it determines that the substantial rights of any party may have been prejudiced because the agency decision is — . . . (*d*) Made upon unlawful procedure . . . ."

30A, § 14 (7). After reviewing the pages of the transcript in the administrative record, we find that it does not contain any information which might have produced a different result, and, therefore, Catlin suffered no harm. The information it does provide merely illustrates further the undisputed fact that John Catlin & Associates spent time reviewing Ziegler Cooper's architectural plans and noting revisions required by local law; it does not provide any additional evidence that Catlin or his associates "prepared" the plans as required by law. Cf. *Glovsky* v. *Holly Point Estates, Inc.*, 354 Mass. 94, 98 (1968) (no injury where facts otherwise established).

In arguing that the board did not construe the evidence in the light most favorable to him, Catlin misconstrues the law. The right of a party facing summary decision to have the facts viewed in a favorable light, *Hub Assocs.* v. *Goode*, 357 Mass. 449, 451 (1970), does not entitle that party to a favorable decision. Conversely, summary judgment entered against a party does not mean that the evidence was not viewed in that party's favor. In making a summary decision, the board must determine that there is no genuine issue as to any material facts and then rule as a matter of law. Mass. R. Civ. P. 56, 365 Mass. 824 (1974). In this matter the facts were undisputed. We find the evidence sufficient to support the board's decision as a matter of law.

3. *Commerce clause.* On the assumption, arguendo, that Catlin has standing to raise the commerce clause, we proceed to consider it. Catlin claims that the board's interpretation of § 60G imposes an impermissible burden on interstate commerce.[7] The requirement that all design drawings for use in

---

[7]To preserve an issue for appeal from an agency's decision, a party must raise the issue before the agency. See *Seagram Distillers Co.* v. *Alcoholic Beverages Control Comm'n*, 401 Mass. 713, 724 (1988) (court refuses to address constitutional claims not raised before the agency), and cases cited. The only evidence that Catlin may have raised the commerce clause issue before the board is an affidavit by his attorney which states that the issue was mentioned orally. The commerce clause issue was not argued in Catlin's memorandum to the board in support of his motion for summary decision. One of the primary duties of trial counsel is to create an ade-

Massachusetts bear the seal of a registered architect,[8] Catlin argues, combined with the board's restrictive interpretation of "prepared" in § 60G illustrates an intent to protect Massachusetts architects from out-of-State competition. Catlin bemoans the difficulties such a system imposes on nonresident architects seeking to practice in Massachusetts, and speculates that the law, as interpreted by the board, would not even allow Frank Lloyd Wright to design a new courthouse for this court.

The board's reading of § 60G, even in conjunction with the Commonwealth's registration requirements for architects, does not violate the commerce clause, art. 1, § 8, of the United States Constitution. A facially neutral statute will survive a challenge under the commerce clause if the statute furthers a legitimate State interest and its burden to interstate commerce is not clearly excessive. *Pike* v. *Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). *Commonwealth* v. *Allied Bond & Collection Agency*, 394 Mass. 608, 613, 615-617 (1985). Neither party to this case argued that the State does not have a legitimate interest in protecting the public welfare by regulating the practice of architecture. The statutory scheme which the Commonwealth adopted to establish such protection does not excessively burden out-of-State architects. While § 60K prohibits architects not registered in Massachusetts from practicing here, § 60L provides numerous exceptions, including one for nonresidents who are certified to practice by the National Council of Architectural Registration Boards (NCARB) and by another State. § 60L (9). Of course, a nonresident architect could always register and, in some cases, even be exempt from the examination requirement. §§ 60B, 60C. Thus, were it possible to recall Mr. Wright from the dead, he would in fact be able to design

---

quate record for his client's appeal; however, putting aside questions concerning whether the commerce clause issue is properly here on appeal as well as whether Catlin lacks standing to raise such a claim, we choose to address this issue now to prevent further uncertainty in this area.

[8]See G. L. c. 112, §§ 60F, 60K.

.

for this court a new courthouse with only a minimal burden imposed by the State.[9]

4. *Were the board's actions arbitrary and capricious?* Since the board's ruling that Catlin violated § 60G was a correct construction of the statute, the board was authorized to *revoke* Catlin's certificate of registration under § 60G. A two-year *probation* with a stayed suspension is clearly not arbitrary and capricious.

We remand this case to the single justice with directions to enter a judgment affirming the board's decision.

*So ordered.*

---

[9]Perhaps more to the point, Catlin may associate with nonresident architects in a variety of relationships. For example, Catlin could have remained in his supervisory role, not attached his seal, and required Ziegler Cooper to obtain either a Massachusetts or an NCARB registration, or he could have become more involved in the actual drafting or preparation of the plans as the plaintiff did in *Medlin* v. *Florida State Bd. of Architecture*, 382 So. 2d 708 (Fla. Dist. Ct. App. 1979).